Deitch v Sands Point Ctr. for Health & Rehabilitation (2025 NY Slip Op 02317)

Deitch v Sands Point Ctr. for Health & Rehabilitation

2025 NY Slip Op 02317

Decided on April 23, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 23, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
ROBERT J. MILLER
LOURDES M. VENTURA
PHILLIP HOM, JJ.

2023-07257
 (Index No. 613007/21)

[*1]Andrew Deitch, etc., appellant, 
v
Sands Point Center for Health and Rehabilitation, respondent.

Krentsel Guzman Herbert, LLP (Horn Appellate Group, Brooklyn, NY [Scott T. Horn], of counsel), for appellant.
Lewis Johs Avallone Aviles, LLP, Islandia, NY (Amy E. Bedell of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the plaintiff appeals from an order of the Supreme Court, Nassau County (Conrad D. Singer, J.), entered June 8, 2023. The order, insofar as appealed from, granted those branches of the defendant's motion which were for summary judgment dismissing the causes of action alleging medical malpractice and violations of Public Health Law §§ 2801-d and 2803-c.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and those branches of the defendant's motion which were for summary judgment dismissing the causes of action alleging medical malpractice and violations of Public Health Law §§ 2801-d and 2803-c are denied.
On October 26, 2020, the plaintiff's decedent, then 80 years old, was admitted to the defendant's rehabilitation facility. At the time of her admission, the decedent suffered from several medical conditions, including dementia, and had recently suffered a fall at her home and fractured her hip. On November 3, 2020, the decedent suffered a fall in her room at the defendant's rehabilitation facility, which caused her to sustain a subdural hematoma. After the defendant's staff members discovered the prone body of the decedent on the floor, they contacted Emergency Medical Services (hereinafter EMS). Upon arrival, EMS personnel allegedly found the decedent on the floor alone, unresponsive, and bleeding, with a pillow underneath her head. The decedent did not have an identification band on her person, and EMS personnel reported that the defendant's staff members were uncooperative in providing them with information about the decedent's medical status. The decedent died after being transferred to a hospital. Her death certificate identified "subdural hematoma due to blunt force head trauma" as a significant condition contributing to her death.
In October 2021, the plaintiff, as executor of the decedent's estate, commenced this action against the defendant, asserting, inter alia, causes of action alleging medical malpractice and violations of Public Health Law §§ 2801-d and 2803-c. Following the completion of discovery, the defendant moved, among other things, for summary judgment dismissing those causes of action. By order entered June 8, 2023, the Supreme Court granted those branches of the motion. The plaintiff appeals.
"On a motion for summary judgment dismissing the complaint in a medical malpractice action, a defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure" (Quinones v Winthrop Univ. Hosp., 230 AD3d 1170, 1171 [internal quotation marks omitted]; see Huichun Feng v Accord Physicians, PLLC, 194 AD3d 795, 796). "In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars" (Huichun Feng v Accord Physicians, PLLC, 194 AD3d at 796 [internal quotation marks omitted]; see George v Plotnitskiy, 222 AD3d 730, 731).
"Liability under the Public Health Law contemplates injury to the patient caused by the deprivation of a right conferred by contract, statute, regulation, code or rule, subject to the defense that the facility exercised all care reasonably necessary to prevent and limit the deprivation and injury to the patient. Thus, the basis for liability under Public Health Law § 2801-d is neither deviation from accepted standards of medical practice nor breach of a duty of care. Rather, it contemplates injury to the patient caused by the deprivation of a right conferred by contract, statute, regulation, code or rule" (Schwartz v Partridge, 179 AD3d 963, 965 [citation and internal quotation marks omitted]; see Broderick v Amber Ct. Assisted Living, 200 AD3d 840, 841).
"While it is true that a medical expert need not be a specialist in a particular field in order to testify regarding accepted practices in that field . . . the witness nonetheless should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable" (Abruzzi v Maller, 221 AD3d 753, 756 [internal quotation marks omitted]; see Hannen v Nici, 230 AD3d 1118, 1120). "Thus, where a physician opines outside his or her area of specialization, a foundation must be laid tending to support the reliability of the opinion rendered" (Hannen v Nici, 230 AD3d at 1120 [internal quotation marks omitted]; see Mustello v Berg, 44 AD3d 1018, 1019). Additionally, "[c]onclusory statements set forth in an affirmation of a medical expert which do not refute or address the specific allegations of negligence made by the plaintiff in his or her complaint and bill of particulars are insufficient to make a prima facie showing that a defendant . . . is entitled to judgment as a matter of law" (Ojeda v Barabe, 202 AD3d 808, 810 [internal quotation marks omitted]; see Bendel v Rajpal, 101 AD3d 662, 663).
Here, in support of its motion for summary judgment, the defendant relied on an expert affirmation of a physician who engaged in, inter alia, the practice of cardiac critical care. This affirmation did not indicate that the physician had training in geriatric or nursing home care or what, if anything, the physician did to become familiar with the standard of care for these specialties (see Quinones v Winthrop Univ. Hosp., 230 AD3d at 1171; Samer v Desai, 179 AD3d 860, 863; Galluccio v Grossman, 161 AD3d 1049, 1052). Furthermore, the defendant's expert failed to specifically address the allegations that the defendant's staff members left the decedent on the floor unattended while awaiting the arrival of EMS and failed to cooperate with EMS personnel upon their arrival (see McCarthy v Ashikari, 206 AD3d 718, 721; Ross-Germain v Millennium Med. Servs., P.C., 144 AD3d 658, 659-660). Contrary to the affirmation of the defendant's expert, the EMS report reflected that the defendant failed to provide EMS personnel with more than mere transfer paperwork. As per the report, the decedent initially could not be identified because she did not have an identification band, and EMS personnel did not know whether the patient was on blood thinners or subject to any "advance directives."
Accordingly, the defendant failed to establish, prima facie, that its staff members did not depart from the requisite standard of care (see generally McCarthy v Ashikari, 206 AD3d at 721). Further, the alleged conduct and inaction giving rise to these alleged departures constituted a substantial basis for the causes of action alleging violations of Public Health Law §§ 2801-d and 2803-c (see generally Schwartz v Partridge, 179 AD3d at 965).
Contrary to the defendant's contention, the plaintiff did not abandon his claim for punitive damages. As the plaintiff contends on appeal, "Public Health Law § 2801-d(2) permits punitive damages against a medical facility where a deprivation of a patient's rights is found to be willful or in reckless disregard to the patient's rights" (Valensi v Park Ave. Operating Co., LLC, 169 AD3d 960, 962).
Accordingly, the Supreme Court should have denied those branches of the defendant's motion which were for summary judgment dismissing the causes of action alleging medical malpractice and violations of Public Health Law §§ 2801-d and 2803-c, without regard to the sufficiency of the plaintiff's opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
We need not reach the parties' remaining contentions in light of our determination.
CONNOLLY, J.P., MILLER, VENTURA and HOM, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court